West, J.
Of the questions raised on this record, the first in order is the inquiry, was the “ separate school district ” formed under the supplementary act of April 9, 1867, a legal organization ?
In considering questions arising under the school legislation of the State, such construction should be placed on the various enactments, and their several provisions, as will give harmony to the school system and secure, as far as practicable, its equal benefits, and the reasonable facilities for their enjoyment, to every locality, without doing marked injustice to any. Observing this rule, and extending the principle recognized in Canton v. Meyer et al. 9, Ohio St. 580, to villages incorporated subsequent to the passage of the general school law of 1853, an easy and rational solution of the questions arising in this case is furnished.
The supplementary school law of April 9, 1867 (S. & S. 717) provides that “any sub-district, or any two or more contiguous sub-districts containing not less than two hundred and seventy-five inhabitants, may become a separate school district,” &c., and then adds, “but the provisions of this act shall not extend to, or include any city, town, or incorporated village, now governed as to schools, by any special law, or by the Alerón law, or by the law for the better regulation of the public schools in cities, towns, etc. passed, February 21, 1849,” &c.
*347 As the act does not, in terms, exclude from its operation cities, towns and incorporate villages, other than those specified, it was competent in the oi'ganization, under it, of sub-district No. 15, as a “separate school district,” to include therein the incorporated village College Hill, unless the same had ceased to constitute a part of said sub-district, by operation of the general school law of March 14, 1853, (S. & C. 1346.)
Section one of the last named act, after constituting townships into single school districts, to be under the control of township boards of education, and the then existing school districts and fractional districts into “sub-school districts,” to be controlled by boards of local directors under the supervision of the township boards, excepts from the operation of the act the cities, towns and incorporated villages specified in the sixty-seventh section thereof, which are the same excepted from the operation of the supplementary act of April 9, 1867, (S. & S. 717) and then enacts “that nothing in this act shall be so construed as to give to the township boards of education, or to the local directors of sub-districts, jurisdiction over any territory in the township' included within any city or incorporated village, with the territory thereto annexed for school purposes, which shall elect or appoint a board of education, as hereinafter provided.”
Section 32 of this act provides that “each city or incorporated village, including the territory annexed to the same for school purposes, not otherwise specially regulated by charter, or otherwise governed as to schools, by laws as specified in the sixty-seventh section of this act, and which, with the territory annexed, contains not less than three hundred inhabitants, shall be and is hereby created a separate school district; and the qualified voters of such city or incorporated village, with the territory annexed, shall, at the same time and in the same manner that local directors of the sub-districts of the township are elected by the provisions of this act, proceed to elect three persons who shall constitute a board of education for such city or incorporated village with the territory annexed,” &c.
*348 The thirty-second section would seem to be peremptory, and withdraw from the jurisdiction of the township every incorporated village with the territory annexed, upon the instant it attained three hundred inhabitants, without regard to whether it takes steps to effect a separate organization or not. But this cannot have been intended; for section one excludes from the school jurisdiction of township boards not every incorporated village with the territory annexed, nor every such village upon its acquiring three hundred inhabitants, but every such village which shall “elect or appoint a board of educationFrom this language it is quite apparent that the election or appointment of a certain board of education, or, in other words, that the organization of every such incorporated village into a separate school district, must be effected as a condition precedent to the cessation of township jurisdiction over it.
A portion of territory containing much less than three hundred inhabitants could, before the enactment of the municipal code of 1869, become incorporated as a village. But such incorporation clearly did not withdraw it from the control of the township board. The village and the territory of the sub-district from which it may have been carved, continued to be united or annexed for school purposes, under township authority, until the requisite population was acquired.
But would its attainment of three hundred inhabitants, on the day or the week following the time for electing a board, withdraw it instantly from the school privileges and jurisdiction of the township ? It could not effect an organization until the next year. It would, therefore, be left without, and powerless to avail itself of, school benefits for an entire year. This could not have been intended. The first section plainly implies the contrary, and that it shall continue under township jurisdiction until a separate organization be effected, notwithstanding it shall have sooner acquired three hundred inhabitants.
The rational interpretation of the several sections, therefore, is, that every incorporated village continues to be a con *349 atituent part of the sub-district within which it is formed, and subject to the school jurisdiction of the township, until the power of separate organization shall have been exercised, the portion of the district not included within the village being “territory annexed” thereto, in the sense of the statute.
But before such village and the “ territory annexed” attain a population of three hundred, they may organize as a separate school district under the act of April 9, 1867, which requires them to contain only two hundred and seventy-five inhabitants in order to effect the same. Now, when, after such separate organization under the act of 1867, the population of the village alone shall have reached three hundred, does it, eo instanti, cease to be a part of the separate district so organized, and become an independent district under the act of 1853, by force of section thirty-two? Surely not. We think the entire district, including the village and the territory annexed, may reorganize under the latter act, but its parts do not sever.
But let it be supposed that, before any separate organization under either act, the aggregate population of the sub-district has attained three hundred, that of the included village being much less, does any reason exist why such sub-district, including the village, may not organize and become a separate district under the act of 1853, as “ an incorporated village with the territory annexed ? ” None can be perceived; and it is certainly not repugnant to the provisions of section thirty-two.
But separate organization in the case last supposed is not obligatory. Let it be further supposed, then, that no such organization is effected until the village population alone reaches three hundred, is a severance of the village from the residue of the district instantly wrought by force of section thirty-two ? And does a reason then arise why they may not join in organizing a separate district, as an “incorporated village with the territory annexed,” the same as in the case first supposed ? To us it seems that both of these questions must be answered in the negative; otherwise, it might *350 occur that the portion of the district not included in the village, which may have contributed substantially to the interests and efficiency of the schools within the limits of the latter, might be thus excluded from and denied the benefits of such schools, and left destitute of all educational advantage, which it is unreasonable to presume the statute intended. Still less reasonable is it, that three hundred inhabitants, part of a sub-district, may, by voluntarily pro- ’ curing themselves to be incorporated as a village, monopolize all its material and substantial school interests, its edifice and apparatus, to the exclusion and great prejudice of the remaining part.
It is not a sufficient answer, that such remaining portion continues under and may be provided for by the township board. The provisions already made for other portions of the township may not be such as to accommodate this; and we cannot think the legislature intended the educational interests of any locality or part of a district should be thus precarious and dependent on the jealousy or caprice of a neighboring locality or adjacent part.
The reasonable construction of the several provisions of the school act then is, that when an incorporated village is formed within, or to include a material and substantial portion of any sub-district, no part thereof is, by reason of such incorporation, withdrawn from the school jurisdiction of the township, but the whole continues to form and constitute one sub-district, under township authority, until the actual organization of a separate district is effected, in which the inhabitants of that portion not included within the village limits may participate, it being, in the sense of the statute, “ territory annexed.” Nor can their severance be legally effected without the joint action of the township and district boards of education as provided in section thirty-two.
No steps having been taken to organize' any part of sub-district No. 15 in Mill Creek township, into a separate district, under the act of 1853, the village of College Hill, notwithstanding its population exceeded three hundred, con- *351 tinned to be part of said sub-district until June, 1867, at which time the entire sub-district was legally organized as a separate district under the act of April 9, 1867.
By the act of March 14, 1858, the township clerk is made clerk of the township board of education, and, as such, has devolved upon him, among others, the duty of filling vacancies in the board. (S. & C. 1347, § 3.)- By section 34 of the act, as amended, (S. & S. 720,) the board of education of the separate school districts are required to elect from their own number a clerk, who is clothed with all and singular-the powers and duties, in respect to such schools, which are devolved upon the clerk of the township board in respect to schools under its charge; one of which is to fill vacancies in the board by appointment. By the fifth section of the act of April 9, 1867, the board of education of the separate districts are invested with all the powers and charged with all the duties which by law are devolved on the boards of education of the separate districts organized under the act of March 14, 1853. The clerk of the board of education of separate school district No. 15 of Mill Creek township possesses the power legally to fill, by appointment, vacancies occurring therein by death, resignation, &c.
Wherefore, Henry M. Cist, the plaintiff in error, having been duly appointed to fill a legal vacancy in said board by the clerk thereof, is entitled to hold and exercise said office until the regular election of members of said board next ensuing.
The judgment of the district court is reversed with costs, and the cause remanded for further proceedings.
Welch, C. J., and White, Day and McIlvaine, JJ., concurred.